Lori J. Costanzo, SBN 142633
Lucy Goodnough, SBN 310607
COSTANZO LAW FIRM, APC
111 West Saint John Street, #700
San Jose, CA 95113
Phone:    408.993.8493
Fax:      408.993.8496
Email:    Lori@costanzo-law.com
          Lucy.Goodnough@costanzo-law.com

Attorneys for Plaintiffs
**GLORIA ZAMORA & ANTONIO ZAMORA**

UNITED STATES DISTRICTCOURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GLORIA ZAMORA and ANTONIO ZAMORA,<br><br>         Plaintiffs,<br><br>v.<br><br>CITY OF SANTA CLARA; SANTA CLARA POLICE DEPARTMENT; CHIEF OF POLICE PATRICK NIKOLAI, SCOTT MEAD; SANTA CLARA POLICE OFFICER #227; SANTA CLARA POLICE OFFICER #239; SANTA CLARA POLICE OFFICER #276; and DOES 1–25 and ROES 26–50, inclusive,<br><br>         Defendants. | Case No.:  5:21-cv-5610<br><br>**COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

Plaintiffs GLORIA ZAMORA and ANTONIO ZAMORA each allege against Defendants, and each of them, as follows:

<strong>NATURE OF THE ACTION</strong>

1.      This is a complaint for civil rights violations, false imprisonment, excessive force, battery, unlawful search and seizure, and other claims, arising the police misconduct in the City of Santa Clara, Santa Clara County. Nine Santa Clara County police officers targeted the Zamoras, handcuffing and imprisoning Mr. Zamora in one of the police cars, while several of them serially and repeatedly sexually assaulted Ms. Zamora, because she is a woman, lewdly groping her under the guise of performing a pat down search, then handcuffed and imprisoned her as well while they destroyed the Zamoras' car and property in it. The officers refused to tell either Plaintiff why they were being restrained, abused, and searched, and refused to disclose their badge numbers. The officers selectively turned their body cameras on and off to conceal their wrongful conduct, and cheered and joked with each other, demonstrating that this is a pattern and practice. They finished by telling the Zamoras they were being "let off" with a warning for a "traffic violation"—clear consciousness of the wrongfulness of their conduct. Reporting officer Defendant Scott Mead fraudulently concealed that he and his fellow officers manipulated the body camera evidence when he stated in his report that "*My BWC was on and documented this incident*" and that "I uploaded photos and my BWC into evidence." When the Zamoras reported this to the officers' employers, the City and Santa Clara Police Department told the Zamoras that officers were too busy with high priority cases, yelled at them, told them there was no way this could have happened, and refused access to even the doctored recordings. The Zamoras were targeted for this misconduct by Defendants, and each of them, because they are Hispanic and because Ms. Zamora is a woman.

<strong>PARTIES</strong>

2.      Plaintiff GLORIA ZAMORA is an individual who, at all material times was a resident of the State of California in this district.

3.      Plaintiff ANTONIO ZAMORA is an individual who, at all material was a resident of the State of California in this district.

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

4. Defendant CITY OF SANTA CLARA ("City") is a city and public entity established by the laws and Constitution of the State of California, and owns, operates, manages, directs, and controls the Santa Clara Police Department ("SCPD") which employs other defendants in this action.

5. Defendant SANTA CLARA POLICE DEPARTMENT ("SCPD") is an agency run by Defendant City.

6. Defendant City of Santa Clara has refused to produce records and police reports in response to Plaintiffs' lawful requests for complete records and information. Plaintiff reserves the right to amend this complaint with further facts and substituting individuals for Doe Defendants after receiving Defendants' reports and records in this matter.

7. Defendant CHIEF OF POLICE PATRICK NIKOLAI at all material times was the Chief of Police for the SCPD and was acting within the course and scope of that employment. In that capacity, Defendant Nikolai was a policy making officer for the City.

8. Defendant SCOTT MEAD was at all material times a law enforcement officer employed by Defendants SCPD and the City acting within the course and scope of that employment. During the subject incident he functioned as the patrol supervisor. He is sued in his individual capacity for actions taken under color of state law and within the scope of his employment with Defendants City and SCPD.

9. Plaintiffs are informed and believe that SANTA CLARA POLICE OFFICER #227 ("Defendant #227"), was at all material times a law enforcement officer employed by Defendants SCPD and the City acting within the course and scope of that employment. His identity is currently known to Plaintiffs only by his badge number. When the Defendant #227's true name is ascertained, Plaintiffs will amend this Complaint. He is sued in his individual capacity for actions taken under color of state law and within the scope of his employment with Defendants City and SCPD.

10. Plaintiffs are informed and believe that SANTA CLARA POLICE OFFICER #239 ("Defendant #239"), was at all material times a law enforcement officer employed by Defendants SCPD and the City acting within the course and scope of that employment. His identity is currently known to Plaintiffs only by his badge number. When the Defendant #239's true name is ascertained,

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

Plaintiffs will amend this Complaint. He is sued in his individual capacity for actions taken under color of state law and within the scope of his employment with Defendants City and SCPD.

11.     Plaintiffs are informed and believe that SANTA CLARA POLICE OFFICER #276 ("Defendant #276"), was at all material times a law enforcement officer employed by Defendants SCPD and the City acting within the course and scope of that employment. His identity is currently known to Plaintiffs only by his badge number. When the Defendant #276's true name is ascertained, Plaintiffs will amend this Complaint. He is sued in his individual capacity for actions taken under color of state law and within the scope of his employment with Defendants City and SCPD.

12.     DOES 1 through 25 are unnamed because their identities are unknown to Plaintiffs, who therefore sues these each of those Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint when their true names and capacities are ascertained. Each Doe Defendant was an employee of the City and/or SCPD, and at the time of these events was acting as an agent of of the City and/or SCPD and at all material times acted within the course and scope of that relationship. Plaintiff alleges upon information and belief that each of the Doe Defendants was negligently, wrongfully, and otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Plaintiff. Further, one or more Doe Defendants was at all material times responsible for the hiring, training, supervision, and discipline of other defendants, including Doe Defendants. On information and belief, each is an employee or agent of the City or SCPD acting within the course and scope of that employment, and each was involved in the misconduct, including one or more deprivations of the constitutional or statutory rights of one or both Plaintiffs either as a direct participant or supervisor.

13.     Each individually named defendant and each Doe defendant acted under color of state law and within the scope of his or her agency and employment with the City and SCPD. Each acted in concert with the other Defendants. Each officer Defendant was on duty as a peace officer and exercising his authority as a peace officer when they, and each of them, either as direct participant or supervisor, engaged in the misconduct alleged, and such misconduct resulted from the use of their authority as peace officers. All actions of each Defendant were ratified and approved by officers and managing agents of each other Defendant.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

14.     ROES 26–50 are entities, respectively, sued under fictitious names because their true names and capacities are unknown to Plaintiffs. When the Roe defendants' true names and capacities are ascertained, Plaintiffs will amend this Complaint to asserting their such names and capacities. Plaintiffs are informed and believes that each of the fictitiously named Defendants is responsible in some manner for the occurrences alleged, and that each Plaintiffs' damages were proximately caused by those Defendants. Each reference to any Defendant refers to all Defendants sued under fictitious names.

15.     On information and belief, each Defendant was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things alleged, was acting within the course and scope of that relationship. On information and belief, each Defendants gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged, except as otherwise specifically alleged.

16.     At all material times, each Defendant was jointly engaged in tortious activity, and an integral participant in the conduct described herein including the wrongful search, seizure, and use of excessive force against one or both Plaintiffs, resulting in the deprivation of one or both Plaintiffs' constitutional rights and other harm.

17.     15. At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California and the City of Santa Clara

18.     The acts and omissions of all Defendants were at all material times pursuant to the actual customs, policies, practices and procedures of the City of Santa Clara.

19.     Each Plaintiff brings these claims as Private Attorney General, to vindicate not only her own rights but others' civil rights of great importance.

<u>JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT</u>

20.     This is a civil rights action arising from Defendants' civil rights violations and other wrongdoing against Plaintiffs, in the City and County of Santa Clara. Plaintiffs allege claims under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution, as well as the laws and Constitution of the State of California; accordingly, this Court has subject matter

jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Plaintiffs' state law claims forming part of the same case and controversy under 28 U.S.C. § 1367.

21.     Plaintiffs' claims arise out of events and a course of conduct involving officials of the City of Santa Clara and the Santa Clara Police Department in Santa Clara County in this state and judicial district. This action is properly assigned to the San Jose Division of the United States District Court for the Northern District of California, under Civil Local Rule 3-2(e).

22.     The monetary value of each Plaintiff's claims exceeds the jurisdictional minimum of this Court.

23.     Plaintiffs, at all relevant times, each were and are Santa Clara County residents. Defendants City and SCPD entities, agencies, and employers in Santa Clara County. Defendants Mead, #227, #239, #276, and Nikolai, and each other officer Defendant, are also employees of the City and SCPD employed in Santa Clara County. Plaintiffs allege on information and belief that Does 1–15 were and are California residents employed in Santa Clara County and that Roes 16–25 were and are California agencies or entities authorized to do and doing business in Santa Clara County.

24.     The acts, omissions, damages, and injuries that form the basis of this lawsuit occurred and were sustained in Santa Clara County.

## TIMELINESS AND CLAIM PRESENTATION

25.     This lawsuit is timely filed within all applicable statutes of limitation.

26.     Plaintiffs are not required to comply with California Government Code claims presentation procedure for their claims under the federal Civil Rights Act, 42 U.S.C. § 1983.

27.     As to any claims for which they were required to comply with the California Government Code claims presentation procedure, Plaintiffs each timely and properly filed their tort claims under the Government Claims Act, California Government Code § 810 et seq., as extended under applicable Executive Orders regarding the COVID-19 state of emergency in California.

28.     On March 21, 2020, under Executive Order N-25-20, paragraph 11 Governor Newsom extended the statutory deadline for claim presentation under the Government Claims Act by sixty days. On May 19, 2020 under Executive Order N-65-20 paragraph 10, as amended by Executive Order N-65-21, paragraph 6, Governor Newsom further extended the statutory deadline for claim

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

presentation under the Government Claims Act by an additional sixty days. Accordingly, under Executive Orders N-25-20, and N-65-20 as amended by Executive Order N-26-21, Plaintiffs' deadline under the Government Claims Act for presenting claims based on the May 24, 2020 violations, was extended from November 24, 2020 by 120 days to March 24, 2021. Plaintiffs each timely met this claim presentation deadline under the California Government Claims Act.

    a.    On February 4, 2021, Ms. Zamora timely presented her Claim for Damages under California Government Code § 910 by depositing it in the mail on that date. On May 17, 2021, her Claim for Damages was deemed denied by operation of law forty-five days after the February 4, 2021 date of deposit.

    b.    On February 5, 2021, Mr. Zamora timely presented his Claim for Damages under California Government Code § 910 by depositing it in the mail on that date. On April 4, 2021 Claims for Damages were each deemed denied by operation of law forty-five days after the February 18, 2021 date of deposit.

    c.    On February 18, 2021, Ms. Zamora and Mr. Zamora each timely presented their respective Amended Claim for Damages under California Government Code § 910 by depositing them in the mail on that date. On April 4, 2021, each Amended Claim for Damages was deemed denied by operation of law forty-five days after the February 18, 2021 date of deposit.

29.    In the alternative and in an abundance of caution, Plaintiffs each concurrently petition the Court for relief from the claims procedure.

    a.    On February 18, 2021, Ms. and Mr. Zamora each also made their respective Application to Present a Late Claim under California Government Code § 911.4 by depositing them in the mail on that date. On April 4, 2021, each Application to Present a Late Claim was deemed denied by operation of law 45 days after the February 18, 2021 date of deposit.

    b.    Plaintiffs' concurrently filed Petition for Relief from the Claims Procedure are timely, within six months of the date their Applications to Present a Late Claim were denied by law.

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

c. Plaintiffs will thereafter file this Complaint timely following the Court's order granting their Petitions.

## FACTS

30.     This case arises the police misconduct in the City of Santa Clara, Santa Clara County that began on May 24, 2020.

31.     Ms. Zamora is a 34-year-old woman residing in San Jose, Santa Clara County. Prior to the COVID-19 pandemic, she worked as a driver for Home First Services, a nonprofit organization that offers services, shelter, and housing opportunities to the homeless and those at risk of homelessness in Santa Clara County. Mr. and Ms. Zamora live in San Jose in Santa Clara County. Mr. and Ms. Zamora are married.

32.     On May 24, 2020, a Sunday, at approximately 6 a.m., Mr. and Mrs. Zamora parked their Cadillac Escalade outside the Pruneridge Laundromat to do laundry. They finished their laundry and drove to a nearby 7-Eleven but returned to the laundromat because they forgot some clothes in the drying machine.

33.     While parked in their car, outside the laundromat, a crew of nine police officers arrived, including Defendant Mead and Defendants #227, #239, and #276. They had no probable cause to approach the Zamoras in their car. They proceeded to wrongfully detain both Plaintiffs, proceeded to conduct an unwarranted and destructive search of their vehicle while also engaging in targeted harassment and sexual assault.

34.     Defendants claim to have identified the Zamoras' car as the car earlier involved in a high-speed chase somewhere else in Santa Clara County. However, Defendant Mead affirmatively denied confirming that the Zamoras' car was the vehicle described by a different officer, six hours earlier, essentially admitting that he and the other officers made a pretextual and unlawful traffic stop at 6:00 a.m. to detain Plaintiffs. The stop was racially targeted, in violation of Fourteenth Amendment's equal protection clause. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("Constitution prohibits selective enforcement of the law based on considerations such as race . . . constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment").

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

35.     Moreover, Defendants' seizure of Plaintiffs were limited by the purpose for which "the stop was made . . . . A seizure justified only by a police-observed traffic violation, therefore, become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission of issuing a ticket for the violation." *Rodriguez v. United States*, 135 S. Ct. 1609, 1612 (2015) (brackets in original).

36.     None of the officers followed basic police procedures to issue a citation for a traffic infraction. They should have explained the reason for the stop and what they wanted Plaintiffs to do —presumably provide a driver's license, vehicle registration and proof of insurance—and then allow Plaintiffs the opportunity to comply. Instead, the officers, for no legitimate law-enforcement reason, with guns drawn and tasers drawn and pointed at Plaintiffs, ordered Mr. Zamora to throw the car keys out the window and exit the car. Plaintiffs were entirely confused as to why the officers were accosting them and the officers' inexplicable aggression and deliberate provocation. However, Mr. Zamora obeyed, and the officers immediately handcuffed him and confined him in a patrol car.

37.     With weapons still drawn, the officers ordered Ms. Zamora to exit her vehicle backwards, and forced her to lift her sweater, and do a full, 360-degree turn. When she asked why Plaintiffs were being detained, the officers claimed that the car was a stolen vehicle and forced Ms. Zamora on the ground to her knees. While lifting her back onto her feet, the supervising officer, Defendant Mead forced his hand between her legs and groped her groin, crotch, and buttocks, under the guise of patting her down. However, Ms. Zamora was wearing form-fitting leggings. There was no reason to touch or search her groin, crotch, or buttock areas because the leggings made it impossible for anything to be hidden from even a visual search in those areas.

38.     Ms. Zamora was then taken behind a police car, where different male officers also each took turns grabbing and groping her on the groin, crotch, and buttocks, another two to three times.

39.     Meanwhile, Mr. Zamora was harassed by one of the officers while detained in the patrol car. To intimidate Mr. Zamora, the officer told Mr. Zamora that Mrs. Zamora was under arrest. The officer also repeatedly told Mr. Zamora that he "knew what type of people" Mr. and Mrs. Zamora were, to further confuse and intimidate him. From his position in the patrol car, Mr. Zamora could

1    only see the top of his wife's head, but he heard the officers outside say, "Make her turn around

2    again."

3         40.    Mrs. Zamora was then handcuffed and brought to the back of the patrol car with Mr.

4    Zamora. The officers repeatedly asked Plaintiffs where they stole the car and what gang they were

5    part of. Additionally, they repeatedly asked Plaintiffs who "they rolled with" and "where the load

6    was."

7         41.    Plaintiffs explained that Mrs. Zamora owned the car and proved that the car was not

8    stolen, showing the officers the proof of insurance for the vehicle in Mrs. Zamora's name. Plaintiffs

9    also explained that Mrs. Zamora's name was not yet on the title because the COVID-19 pandemic

10   had delayed the transfer of title of the vehicle.

11        42.    However, the officers then began to search the car, without a search warrant and

12   without asking for or obtaining consent from either Plaintiff. The officers tore up the couples' laundry

13   bags, threw their newly cleaned clothes to the ground, ripped apart their car's speaker, and broke their

14   windshield, center console, lights, and headliner. When Mrs. Zamora asked the officers not to throw

15   the freshly laundered clothes onto the ground, Defendant #227 responded by mocking her. When the

16   officers were unable to find anything incriminating, they threw their used gloves in the car, saying,

17   "It's all trash anyways."

18        43.    Upon finishing the unauthorized search, the officers informed Plaintiffs that they were

19   being "let go on the traffic infraction" with just a warning, even though Plaintiffs had not made any

20   traffic violations in the first place, nor had any officer at any previous time mentioned any traffic

21   violation. When the Zamoras asked the officers for their badge numbers, the officers responded that

22   they "did not have a badge number." Many of the police cars were unmarked.

23        44.    There were nine officers, all either Asian or  Caucasian. Two of the Asian officers

24   were extremely rude, and all the officers high-fived and cheered each other on throughout the torment.

25   Throughout, they deliberately tried to humiliate the Zamoras, to provoke them with sexual assault,

26   insults, mistreatment, and refusals to answer the Zamoras' questions as to why they were being

27   detained, why their civil rights were being violated by a gang of thuggish officers, what the Zamoras

28   were being accused of, or to even identify themselves.

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

45.     In addition, the officers all constantly switched their body-worn cameras on and off throughout the entire ordeal. After the unauthorized search, one of the officers, Defendant Mead, walked away to the side, turned his body camera on, and then turned back to face the Plaintiffs, loudly saying something about a chase and bidding the Plaintiffs to "have a good day." Defendant #227 also spoke out loud, finishing his remarks, "This is how we do it in Santa Clara."

46.     At approximately 6:20 a.m., Ms. Zamora called 911 to report the incident and was told that she would receive a call back.

47.     At approximately 9:00 a.m., after receiving no call back, Plaintiffs called 911 again and were told that officers were too busy with high priority cases to attend to their report. Plaintiffs then sent emails out to Santa Clara Police Department, local news stations, and Santa Clara City Counsel, in addition to calling San Jose Police Department to ask for guidance on their next steps.

48.     At approximately 11:20 a.m., Plaintiffs received a call from a lieutenant who refused to give his name. He asked Ms. Zamora to explain what had happened, but as she was explaining, he cut her off, yelling, "This is a lieutenant with the Santa Clara Police Department. It isn't true! I am recording this entire conversation." He then hung up.

49.     Ms. Zamora called him back and he told her that he had watched the body-worn camera videos and was sure the incident did not occur as she described. Ms. Zamora asked for the body-worn camera recordings. The lieutenant agreed to give it to her but hung up with no further instruction on how Ms. Zamora could obtain the recordings.

50.     Meanwhile, at least Defendant Mead wrote deliberately false and misleading report concerning what had occurred. The falsehoods and material omissions induced but are not limited to excluding essential details and downplaying and omitting Defendants' misconduct. For example,

        a.     It falsely stated that "the vehicle made a quick and evasive movement into the parking-lot of 2358 Pruneridge Ave." The Zamoras made no evasive maneuvers, they were parked in a parking after having returned from the 7-Eleven to the laundromat and were completely unaware that they were being stalked by the officers.

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

b.  It falsely stated that "I did fear that the driver of the vehicle would flee from me if I did not take immediate action and order the occupants form the vehicle at gunpoint." The Zamoras never attempted to flee or evade or threaten Mead or any of the officers. The report omitted that nine officers descended on the Zamoras with guns and tasers drawn, completely unnecessarily.

c.  The report misleadingly stated that Ms. Zamora was "ordered from the vehicle with her hands up." She was also ordered to exit the vehicle backwards and raise her shirt.

d.  It misleadingly stated that "She became argumentative with police officers and originally refused to comply with some orders." Ms. Zamora was not argumentative or non-compliant. He did not recount how the officers abused and provoked the Zamoras deliberately. It omits the entire incident of how he himself forced Ms. Zamora to lift her shirt and do a full 360-turn, forced her to her knees, then yanked her up, while groping her groin, crotch, and buttocks; how after that multiple different officers again groped Ms. Zamora's groin, crotch, and buttocks, taking turns, although her clothing made it readily apparent that she had nothing concealed in any of those places; that she asked them why they were being detained, and was told that it was because the vehicle was stolen, that the officers verbally and physically abused each Plaintiff, nor that the officers encouraged and joked with each other to participate in and continue the abuse, with high-fives and jokes.

e.  He misleadingly stated, "SCPD officers and I completed a search of the vehicle," omitting that the officers made an unwarranted, unconsented, and intentionally and wantonly destructive search of the vehicle.

f.  It misleadingly stated, "Gloria began to complain about officers placing her 'clean' clothes on the ground and that an officer left his gloves in the rear of her vehicle," and that the laundry had to be dirty because, according to the cop, Mr. Zamora "told me that they were at the laundry mat to wash their clothing,"

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

and according to the spurious reasoning of the cop, that "meant the clothing was already dirty," and goes on to state "Gloria did not have a rebuttal to my statement." He omits that the Zamoras had explained that they had left the laundromat after cleaning laundry, but returned for a forgotten load in a dryer, that Ms. Zamora asked them not to throw the clean laundry on the ground, in response to which, Defendant #227 mocked her, and when the officers were unable to find anything incriminating, they declared, "It's all trash anyways" to insult and provoke the Zamoras.

g.   It falsely stated that Defendant Mead told Ms. Zamora "that the safest way to search the bags of clothing was by placing them on the ground," omitting that what the officers in fact did was rip the clothing out of the bag and scattered it on the asphalt to provoke the Zamoras.

h.   It failed to describe how the officers turned their body cams on and off.

i.   It misleadingly stated "*My BWC was on and documented this incident* and "I uploaded photos and my BWC into evidence," omitting that Mead and the other officers deliberately turned their body-worn cameras on and off to prevent evidence of their commission of civil rights violations and misconduct from being captured and turned over in evidence.

51.   The foregoing list is illustrative and not exhaustive of the multiple falsifications in the one report Defendants have provided; Defendants have refused to provide any of the body-worn camera footage, nor does this list set forth omissions, misleading statements, or falsifications in any other reports by any of the other participating officers, which Defendants have also refused to provide.

### ENTITY AND SUPERVISORY LIABILITY

52.   The foregoing events show that Defendant City was deliberately indifferent in its supervision of Defendant SCPD, and its retention of the officers involved. The City allowed the SCPD to hire, deploy and retain violent officers such as Defendants. It had no concern for the consequences of those officers and agents committing violent, illegal acts, or compounding the rights violations. It deployed patrol supervisors such as Mead, and the incompetent lieutenants and agents

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

to whom the Zamoras reported the events and who participated in a coverup, treating the Zamoras with callous indifference, denying the Zamoras access to the evidence in reports and body-worn camera footage, each of whom reflexively protected himself and other miscreant officers, rather than exercise independent judgment to protect members of the public. In so doing, the City demonstrated deliberate indifference to the safety and welfare of people with whom SCPD officers come into contact.

53.     Plaintiffs are informed and believes that Defendants City and SCPD are deliberately indifferent to the safety and welfare of people with whom SCPD officers come into contact. These Defendants deployed and retained thuggish, sexist, and racist officers and maintain internal cultures that sanction misconduct, including civil rights violations, excessive force, manipulated body-worn camera footage and other evidence, and fabricated police reports, especially directed against Hispanics and women. The City and SCPD have failed to undertake adequate efforts to train, supervise, or discipline officers such as those involved, without any threat of real consequences for mistreating members of the public, such that the officers know they can tamper with evidence and mistreat members of the public with impunity and unwarranted aggression, taunting them, "This is how we do it in Santa Clara." Defendants City and SCPD are deliberately indifferent to members of the public, including Plaintiffs, with whom officers such as Mead, #227, #239, #276, and the others involved would foreseeably come in contact.

54.     On information and belief, the unconstitutional actions and/or omissions of Defendants were according to the following customs, policies, practices, or procedures of the SCPD and/or the City, which were directed, encouraged, allowed, and/or ratified by Defendant Nikolai and other policy making officers for the City and the SCPD:

a.     to unlawfully enter private property, without a warrant and without other legal basis, including training and permitting officers to do so based on non-existent "exceptions" to the Fourth Amendment;

b.     to use or tolerate the use of excessive and/or unjustified force;

c.     to permit or tolerate law enforcement actions (including uses of force, seizures, searches, or use of unnecessarily harsh and aggressive tactics including sexual

assault) against minorities and/or to retaliate against individuals who exercise or invoke protected rights;

d.     to cover-up violations of constitutional rights by any or all of the following:

    i.     by failing to properly investigate and/or evaluate complaints or incidents of excessive and unreasonable force, and unlawful seizures;

    ii.     by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful police activity; and

    iii.     by allowing, tolerating, and/or encouraging police officers to: fail to activate or selectively activate official cameras and recording devices before and during law enforcement actions, including property entries and searches, seizures and searches of persons or uses of force; fail to file complete and accurate police reports; file false police reports; make false statements; and/or otherwise obstruct or interfere with investigations of unconstitutional or unlawful police conduct, by withholding and/or concealing material information;

e.     to allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and police department personnel, whereby an officer or member of the department does not provide adverse information against a fellow officer or member of the department;

f.     to fail to institute, require, and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and practices and procedures described in this Complaint and in sub-paragraphs (a) through (e), with deliberate indifference to the rights and safety of Plaintiffs and the public, and in the face of an obvious need for such policies, procedures, and training programs; and

g.     to use or tolerate inadequate, deficient, and improper procedures for handling, investigating, and reviewing complaints of officer misconduct made under California Government Code § 910 or applicable law.

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

COSTANZO LAW FIRM, APC
111 W. St. JOHN STREET, #700
SAN JOSE, CA 95113

55.     At all times relevant, Defendants City and SCPD and Does and Roes, with deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of each Plaintiff and others similarly situated, including the right to be free from racial and sex discrimination, excessive force, unlawful searches and seizures, falsified reports, maintained, enforced, tolerated, ratified, permitted, acquiesced to, promulgated, and applied, among others, the following policies, practices and customs:

a.     Encouraging, directing, and tolerating officers to engage in harassing and discriminatory stops, seizures and searches based on racist and sexist criteria;

b.     Failing, with deliberate indifference to Plaintiffs' constitutional rights, to adequately hire, train, instruct, supervise, monitor, evaluate, investigate, discipline, and control officers, including in uses of force, searches, and seizures;

c.     Failing to set up systems to prevent abuse by officers including the failure to properly investigate timely and, when appropriate, discipline uses of force, searches, and seizures;

d.     Failing to terminate or otherwise discipline officers who abuse their authority;

e.     Condoning and encouraging officers in the belief that they can violate the rights of persons such as Plaintiffs with impunity, without consequences to loss of opportunities for retention, promotion, and other employment benefits;

f.     Condoning and encouraging officers in the belief that they can manipulate and falsify video recordings and reports;

g.     Allowing and encouraging a police code of silence, by tolerating police officers either remaining silent or giving false and misleading information during official investigations to protect themselves or fellow officers from internal discipline, civil liability, or criminal charges, and perjuring themselves in criminal cases where they and their fellow officers have falsely arrested, unreasonably searched, or beaten a suspect; and

h.    Aiding and abetting misconduct by withholding evidence from victims with civil claims.

56.    Defendants City, SCPD, and Nikolai ratified and endorsed the wrongful conduct of the Defendant officers by allowing them to remain on duty as police officers, drawing full salaries and interacting with members of the public, without discipline or consequences, despite knowing about how they target, brutalize, and harass minorities, and vandalize minorities' property, and manipulate and cover up evidence of their misconduct. These failures and refusals cause the perpetuation of police abuse against people such as Plaintiffs.

57.    The aforementioned customs, policies, practices, and procedures, the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline, as well as the unconstitutional orders, approvals, ratification and toleration of wrongful conduct of Defendants City, SCPD, Nikolai, and other Does and Roes were a moving force and/or a proximate cause of the deprivations of each Plaintiff's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth below.

## DAMAGES

58.    As a direct and proximate result of the wrongful acts, omissions, customs, practices, policies and decisions of Defendants and each of them, each Plaintiff suffered and will continue to suffer great mental and physical suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused them to sustain damages in a sum to be determined at trial.

59.    As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices and procedures of Defendants and each of them as alleged, Plaintiffs each sustained serious injuries and is entitled to recoverable damages, penalties as allowed by law, costs and attorney fees as allowed by law, and punitive damages against Defendants Nikolai, Mead, #227, #239, #276, and Does 1–25, in their individual capacities.

60.    Damages that are the direct and proximate result of the acts, omissions, customs, practices, policies and decisions of Defendants and each of them are in excess of the jurisdictional minimum of this Court and include future and past medical and other expenses and special damages;

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

COSTANZO LAW FIRM, APC
111 W. St. John Street, #700
SAN JOSE, CA 95113

wrongful searches and seizures; unlawful invasions of their privacy; violation of their constitutional rights, past and future lost earnings, pain and suffering and emotional distress, and all damages, costs, and attorney's fees and penalties recoverable under 42 U.S.C. §§ 1983, 1988, California Civil Code §§ 52 and 52.1, California Code of Civil Procedure § 1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

61.     Defendants and each of them subjected Plaintiffs to their wrongful conduct, depriving Plaintiffs of rights described, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiffs and others would be violated by their acts and/or omissions.

62.     Plaintiffs do not seek punitive damages against Defendant City.

### FIRST CLAIM FOR RELIEF
### DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983, FOURTEENTH AMENDMENT, EQUAL PROTECTION CLAUSE UNLAWFUL DETENTION BASED ON RACE
### by Each Plaintiff against Each Defendant

63.     Plaintiffs reallege and incorporate by reference, all previous allegations.

64.     Defendants, while acting under color of law, deprived each Plaintiff of their civil rights by violating rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, including but not limited to the right to be free from unlawful detentions and other constitutional violations based on membership in a protected class, in this instance the class of Hispanics.

65.     Without probable cause and without justification, Defendants forced the Zamoras out of their car at gunpoint, handcuffed and detained Mr. Zamora in the police car, and handcuffed and detained Ms. Zamora after forcing her to endure multiple, repeated, sexual assaults under the guise of unnecessary searches. They targeted the Zamoras for this mistreatment because the Zamoras are Hispanic. This behavior by Defendants and each of them is disgusting and reprehensible.

66.     As a direct and proximate result of the foregoing, each Plaintiff has sustained injury and damages as alleged above.

67.     Defendants and each of them subjected Plaintiffs to their wrongful conduct, depriving Plaintiff of rights described, deliberately, oppressively, knowingly, maliciously, and with conscious

and reckless disregard for whether the rights and safety of Plaintiffs and others would be violated by their acts and/or omissions. The officers abused their position of public trust to unlawfully detain each Plaintiff and target them for harassment and other misconduct. For public employees tasked with the role of upholding peace and virtue in the county to unlawfully violate civil rights is both disgusting and embarrassing. They punctuated their rights violations with mockery, encouraging each other to further harassment and with every confidence that they would not suffer any consequences. This vile, base, and contemptible conduct is oppressive and despicable, and would be looked down on and despised by reasonable people. The officers also showed they were acting with knowing and willful disregard for Plaintiffs' rights and safety, and aware not only of that their own actions were reprehensible, but of the probable dangerous consequences of their reprehensible actions, which they deliberately failed to avoid. They fraudulently turned their body cameras on and off to prevent the evidence of their conduct from being recorded. They refused to give Plaintiffs their badge numbers or names, even denying at one point that they had badge numbers. At least Defendant Mead's conduct was further fraudulent, in which he intentionally misrepresented later in his police report that "*My BWC was on and documented this incident*" and that "I uploaded photos and my BWC into evidence," knowingly concealing the material fact that he and his fellow officers turned their cameras on and off to prevent footage from capturing misconduct. The officers' casual attitude during the abuse and jocular and encouraging comments to each other, and their well-practiced, coordinated actions in turning their cameras on and off to prevent evidence from being gathered against themselves and each other, show that this is part of a pattern and practice of these officers and the City and SCPD. Moreover, Defendant #227 further betrayed that this reprehensible conduct involves a pattern and practice of the City and SCPD, when he told the Zamoras, "This is how we do it in Santa Clara." Defendants and each of them acted in a willful and intentional manner that was and continues to be despicable, malicious, and outrageous in that it had caused Ms. Zamora to suffer cruel and unjust hardship needlessly. The malicious, oppressive, and fraudulent conduct by Defendants, and each of them, justifies an award of punitive damages against them, and each of them, except as alleged above, up to the constitutional maximum, sufficient to punish and deter such willfully despicable conduct in the future.

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

## SECOND CLAIM FOR RELIEF
### DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983, FOURTEENTH AMENDMENT, EQUAL PROTECTION CLAUSE UNLAWFUL DETENTION BASED ON GENDER
by Plaintiff Gloria Zamora against Each Defendant

68.     Plaintiffs reallege and incorporate by reference, all previous allegations.

69.     Defendants, while acting under color of law, deprived Ms. Zamora of her civil rights by violating rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, including but not limited to the right to be free from unlawful detentions and other constitutional violations based on membership in a protected class, here, of women.

70.     Without probable cause and without justification, Defendants forced Ms. Zamora out of the car backwards and at gunpoint, and to lift her shirt and turn completely around. Defendant Mead then groped Ms. Zamora and handed her over to his other Defendant officers so that they could each grope her again. They then handcuffed her before restraining her in the back of the police car with her husband. The same officers did not force her husband to exit the vehicle backwards, lift his shirt or turn around, nor grope him, demonstrating that their discriminatory motive in doing so. Defendants' derogatory comments also revealed their discriminatory motive, as they leered, "Make her turn around again." They and each of them targeted Ms. Zamora for this violation of her rights because she is a woman. This behavior by Defendants and each of them is disgusting and reprehensible.

71.     As a direct and proximate result of the foregoing, Ms. Zamora has sustained injury and damages as alleged above.

72.     In doing the things alleged each Defendant was acting within the course and scope of this agency or employment of the City and SCPD, and with the consent, permission, and authorization of each other Defendants. Each officer Defendant was on duty as a peace officer and exercising his authority as a peace officer when they, and each of them, engaged in the misconduct alleged, and such misconduct resulted from the use of their authority as peace officers. All actions of each Defendant were ratified and approved by officers and managing agents of each other Defendant.

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

73.    Indeed, SCPD and the City had an official custom of violating the rights of Hispanic women as described. This pattern of targeted harassment, battery, and sexual battery is a custom that is permanent, widespread, and well-settled practice of the City and SCPD. As Defendant #227 stated to Plaintiffs, "This is how we do it in Santa Clara." Each Defendant officer was an officer and employee of SCPD and the City and intentionally violated each Plaintiff's rights privacy, to be free from offensive or harmful touching without consent, and to be free from sexually offensive or harmful contact with sexual organs, groin, and buttocks, and each of their conduct in fact violated Plaintiff's rights to privacy, to be free from offensive or harmful touching without consent, and to be free from sexually offensive or harmful contact with sexual organs, groin, and buttocks, and Defendants, and each of them, did so because it was official custom in SCPD and the City.

74.    Accordingly, the City and SCPD are also liable for each of the acts of excessive force.

75.    Defendants, including each officer and the SCPD while acting through its employees, committed the acts described deliberately, oppressively, and maliciously, in conscious disregard for Ms. Zamora's rights. The officers abused their position of public trust to sexually assault Ms. Zamora not once, but multiple times by multiple officers. Defendants' misconduct was not only offensive contact but also sexual harassment. For public employees tasked with the role of upholding peace and virtue in the county to engage in civil battery and sexual harassment is both disgusting and embarrassing. They punctuated their physical attacks with verbal mockery, encouraging each other to further harassment because Ms. Zamora was vulnerable to further abuse, leering, "Make her turn around again," and high-fiving and cheering each other on. This vile, base, and contemptible conduct is oppressive and despicable, and would be looked down on and despised by reasonable people. The officers also showed they were acting with knowing and willful disregard for Ms. Zamora's rights and safety, and aware not only of that their own actions were reprehensible, but the probable dangerous consequences of their reprehensible actions, which they deliberately failed to avoid. They fraudulently turned their body cameras on and off to prevent the evidence of the battery from being recorded. They refused to give Plaintiff their badge numbers or names, even denying at one point that they had badge numbers. At least Defendant Mead's conduct was further fraudulent, in which he intentionally misrepresented later in his police report that "*My BWC was on and documented this

incident*" and that "I uploaded photos and my BWC into evidence," knowingly concealing the material fact that he and his fellow officers turned their cameras on and off to prevent footage from capturing misconduct. The officers' casual attitude during the abuse and jocular and encouraging comments to each other, and their well-practiced, coordinated actions in turning their cameras on and off to prevent evidence from being gathered against themselves and each other, show that this is part of a pattern and practice of these officers and the City and SCPD. Moreover, Defendant #227 further betrayed that this reprehensible conduct involves a pattern and practice of the City and SCPD, when he told the Zamoras, "This is how we do it in Santa Clara." Defendants and each of them acted in a willful and intentional manner that was and continues to be despicable, malicious, and outrageous in that it had caused Ms. Zamora to suffer cruel and unjust hardship needlessly. The malicious, oppressive, and fraudulent conduct by Defendants, and each of them, justifies an award of punitive damages against them, and each of them, except as alleged above, up to the constitutional maximum, sufficient to punish and deter such willfully despicable conduct in the future.

### THIRD CLAIM FOR RELIEF
### DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983,
### FOURTH AMENDMENT
### EXCESSIVE FORCE
### by Each Plaintiff against Each Defendant

76.     Plaintiffs reallege and incorporate by reference, all previous allegations.

77.     Defendants, and each of them, used excessive force in detaining each of Mr. and Ms. Zamora. At least nine male officers together forced each of them from the car, while the officers surrounded them, brandishing drawn guns and tasers.

78.     Defendants and each of them detained Mr. Zamora in the back of the police car while he was neither resisting nor fleeing, and none of the officers had any reason to believe he was armed or a threat to any of them or any person. At all times there were multiple less intrusive methods of detaining Mr. Zamora available.

79.     Defendants and each of them forced Ms. Zamora to lift her shirt and complete a full circle in full view of all officers and the public and ordered her to her knees. Then, Defendant Mead intentionally groped Ms. Zamora's groin, crotch, and buttocks while hoisting her to her feet, although

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

1   she was wearing form-fitting leggings that made it obvious nothing was concealed in those areas, she

2   was complying and neither resisting nor fleeing, and none of the officers had any reason to believe

3   she, a small female, was armed or a threat to any of them or any person.

4       80.    Then, the other officers took her behind a police car, where multiple other male

5   officers again took turns intentionally grabbing and groping her groin, crotch, and buttocks, all while

6   she was surrounded by male officers, her husband was restrained in a police car, and she still

7   presented no threat, was complying, and was neither resisting, nor fleeing.

8       81.    Thereafter, while she was still surrounded by male officers, and her husband was still

9   restrained in a police car, and she still presented no threat, was complying, and was neither resisting,

10   nor fleeing, they both detained her in the back of the police car and handcuffed her as well. Ms.

11   Zamora is a small woman, about five feet, two inches tall. There were at all times multiple less

12   intrusive methods of detaining her available.

13       82.    Indeed, the officers were relaxed and enjoying themselves as they abused Plaintiffs,

14   making jokes, high fiving each other, and cheering each other on.

15       83.    As a direct and proximate result of the foregoing, each Plaintiff has sustained injury

16   and damage as alleged above.

17       84.    In doing the things alleged each Defendant was acting within the course and scope of

18   this agency or employment of the City and SCPD, and with the consent, permission, and authorization

19   of each other Defendants. Each officer Defendant was on duty as a peace officer and exercising his

20   authority as a peace officer when they, and each of them, engaged in the misconduct alleged, and

21   such misconduct resulted from the use of their authority as peace officers. All actions of each

22   Defendant were ratified and approved by officers and managing agents of each other Defendant.

23       85.    Indeed, SCPD and the City had an official custom of violating Plaintiffs' civil rights

24   as described. This pattern of excessive force is a custom that is permanent, widespread, and well-

25   settled practice of the City and SCPD. As Defendant #227 stated to Plaintiffs, "This is how we do it

26   in Santa Clara." Each Defendant officer was an officer and employee of SCPD and the City and

27   intentionally violated each Plaintiff's rights to be secure in their persons against unreasonable

28   seizures and excessive force, and each of their conduct in fact violated Plaintiffs' rights to be secure

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

1   in their persons against unreasonable seizures and excessive force, and Defendants, and each of them,

2   did so because it was official custom in SCPD and the City.

3         86.      Accordingly, the City and SCPD are also liable for each of the acts of excessive force.

4         87.      Defendants, including each officer and the SCPD while acting through their

5   employees, committed the acts described deliberately, oppressively, and maliciously, in conscious

6   disregard for each Plaintiff's rights. The officers abused their position of public trust to harass and

7   brutalize Plaintiffs, including sexually assaulting Ms. Zamora not once, but multiple times, by

8   multiple officers. For public employees tasked with the role of upholding peace and virtue in the

9   county to engage in this misconduct is both disgusting and embarrassing. They punctuated their

10   physical attacks with verbal mockery, encouraging each other to further harassment, e.g., because

11   Ms. Zamora was vulnerable to further abuse, leering, "Make her turn around again," and high-fiving

12   and cheering each other on, mocking Plaintiffs, and gratuitously destroying Plaintiffs' property and

13   belongings, commenting that these were "all trash, anyways." This vile, base, and contemptible

14   conduct is oppressive and despicable, and would be looked down on and despised by reasonable

15   people. The officers also showed they were acting with knowing and willful disregard for Plaintiffs'

16   rights and safety, and aware not only of that their own actions were reprehensible, but the probable

17   dangerous consequences of their reprehensible actions, which they deliberately failed to avoid. They

18   fraudulently turned their body cameras on and off to prevent the evidence of the battery from being

19   recorded. They refused to give Plaintiff their badge numbers or names, even denying at one point that

20   they had badge numbers. At least Defendant Mead's conduct was further fraudulent, in which he

21   intentionally misrepresented later in his police report that "*My BWC was on and documented this

22   incident*" and that "I uploaded photos and my BWC into evidence," knowingly concealing the

23   material fact that he and his fellow officers turned their cameras on and off to prevent footage from

24   capturing misconduct. The officers' casual attitude during the abuse and jocular and encouraging

25   comments to each other, and their well-practiced, coordinated actions in turning their cameras on and

26   off to prevent evidence from being gathered against themselves and each other, show that this is part

27   of a pattern and practice of these officers and SCPD. Moreover, Defendant #227 further betrayed that

28   this reprehensible conduct involves a pattern and practice of the City and SCPD, when he told the

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

1   Zamoras, "This is how we do it in Santa Clara." Defendants and each of them acted in a willful and

2   intentional manner that was and continues to be despicable, malicious, and outrageous in that it had

3   caused Ms. Zamora to suffer cruel and unjust hardship needlessly. The malicious, oppressive, and

4   fraudulent conduct by Defendants, and each of them, except as alleged above, justifies an award of

5   punitive damages against them, and each of them, except as alleged above, up to the constitutional

6   maximum, sufficient to punish and deter such willfully despicable conduct in the future.

7
                                    **FOURTH CLAIM FOR RELIEF**
8              **DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983,**
                                     **FOURTH AMENDMENT**
9                             **UNLAWFUL SEARCHES AND SEIZURES**
                              **by Each Plaintiff against Each Defendant**
10

11      88.     Plaintiffs reallege and incorporate by reference, all previous allegations.

12      89.     Under the Fourth Amendment Defendants had probable cause to detain Plaintiff for

13  driving a car with two equipment violations. A seizure justified by traffic infractions becomes

14  unlawful under the Fourth Amendment, however, if it is prolonged beyond the time reasonably

15  required to complete the mission of issuing a ticket. *Rodriguez v. United States*, 135 S. Ct. 1609, 1612

16  (2015).

17      90.     The probable cause, if any, under the Fourth Amendment Defendants to detail

18  Plaintiffs was for one equipment violation. Even a seizure justified by traffic infractions becomes

19  unlawful under the Fourth Amendment, however, if it is prolonged beyond the time reasonably

20  required to complete the mission of issuing a ticket. *Rodriguez*, 135 S. Ct. at 1612. Defendants, while

21  acting under color of law, deprived each Plaintiff of their respective civil rights by violating rights

22  guaranteed by the Fourth Amendment of the United States Constitution, including but not limited to,

23  the right to be free from unlawful searches and seizure.

24      91.     Defendants, and each of them, carried out an unreasonable and deliberately seizure of

25  the person of each Plaintiff, while making prolonged and unnecessarily destructive search of

26  Plaintiffs' automobile and property.

27      92.     Defendants, and each of them, also carried out an unreasonable and deliberately

28  prolonged, invasive, and degrading search of Ms. Zamora's person

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

93.     None of the Defendants at any time had any warrant and each was acting or purporting to act in the performance of his respective official duties. At no point did either Plaintiff consent to any of the searches or seizures.

94.     Defendant Mead searched Ms. Zamora's person by making her lift her shirt and turn around in front of him, his fellow officers, and the public, and then groping her groin, buttocks, and crotch. Each of these searches was unreasonable. Defendant Mead had no warrant to search Ms. Zamora's person, nor any probable cause. He deliberately failed and refused to confirm whether the Zamoras' car was the car reported earlier by another officer prior to detaining and forcing the Zamoras out of the vehicle. Neither he nor any other officer had any reason to suspect that Ms. Zamora or her husband was armed, or posed any threat, immediate or otherwise, to any officer or person. Ms. Zamora is a small, five-foot, two-inch woman, who was complying with the instructions of the at least nine male officers, who were armed with drawn tasers and guns, while her husband was restrained in the back of a police car. Further, Ms. Zamora was wearing form-fitting leggings, that revealed to a visual search that she was not concealing anything in her groin, crotch, and buttocks, making the groping entirely unreasonable, prurient, and unnecessary.

95.     The other officer Defendants also searched Ms. Zamora's person by also making her lift her shirt and turn around in front of them, and the public, and taking turns groping her groin, buttocks, and crotch. Each of these additional searches was unreasonable. None of the Defendants had any warrant to search Ms. Zamora's person, nor any probable cause. None of the officers had any reason to suspect that Ms. Zamora or her husband was armed, or posed any threat, immediate or otherwise, to any officer or person, especially since Ms. Zamora had already been subjected to lifting her shirt, turning around, and being groped by Defendant Mead, and was the entire time wearing form-fitting leggings that revealed to any visual search that she was not concealing anything in the area of her groin, crotch, and buttocks, and since she, a small, five-foot, two-inch woman, was complying with the instructions of the at least nine male officers, who were armed with drawn tasers and guns, while her husband was restrained in the back of a police car. These further searches by Defendants, and each of them, were also entirely unreasonable, prurient, and unnecessary.

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

96.     Defendants, and each of them, also tore apart Ms. Zamora's vehicle and Plaintiffs' property in the car: tearing apart their laundry bags and throwing the cleaned clothes everywhere, ripping apart Ms. Zamora's car's speaker, center console, lights, and headliner, and breaking its windshield or acts of gratuitous destruction. No person of reasonable caution would believe that these wantonly destructive acts were a justified intrusion, especially since the officers discarded the less intrusive alternative of confirming with their station that the Zamoras' vehicle was the one earlier reported as involved in a car chase, and had been shown that the vehicle was not stolen with insurance in Ms. Zamora's name and given the explanation of how the COVID-19 pandemic had delayed the transfer of title, before they embarked on the much greater effort of ripping apart the vehicle, in a rampage of destruction.

97.     In doing the things alleged each Defendant was acting within the course and scope of this agency or employment of the City and SCPD, and with the consent, permission, and authorization of each other Defendants. Each officer Defendant was on duty as a peace officer and exercising his authority as a peace officer when they, and each of them, engaged in the misconduct alleged, and such misconduct resulted from the use of their authority as peace officers. All actions of each Defendant were ratified and approved by officers and managing agents of each other Defendant.

98.     Indeed, SCPD and the City had an official custom of violating Plaintiffs' civil rights as described. This pattern of harassment and police misconduct is a custom that is permanent, widespread, and well-settled practice of the City and SCPD. As Defendant #227 stated to Plaintiffs, "This is how we do it in Santa Clara." Each Defendant officer was an officer and employee of SCPD and the City and intentionally violated each Plaintiff's rights to be secure in their persons and property from unreasonable searches and seizures, and each of their conduct in fact violated Plaintiffs' rights to be secure in their persons and property from unreasonable searches and seizures, and Defendants, and each of them, did so because it was official custom in SCPD and the City.

99.     Accordingly, the City and SCPD are also liable for each of the unlawful searches and seizures.

100.    As a direct and legal result, Plaintiffs were each harmed and Defendants' and each of their, unreasonable searches and seizures were a substantial factor in causing each Plaintiff's harm.

Plaintiffs have each become mentally upset, severely emotionally distressed, frustrated, depressed, embarrassed, fragile, humiliated, and aggravated. Each Plaintiff claims non-economic or general damages for such mental and emotional distress and aggravation in a sum in excess of the jurisdictional minimum of this Court.

101.    As a further direct and proximate result of the wrongful acts of Defendants, and each of them, Plaintiffs have each been forced to hire attorneys to prosecute their respective claims and has each incurred and is expected to continue to incur attorney's fees and costs in connection therewith, entitling them each to recover attorney's fees and reimbursement of costs under California Government Code § 12965(b).

102.    Defendants, including each officer and SCPD while acting through their public employees, committed the acts described deliberately, oppressively, and maliciously, in conscious disregard for each Plaintiff's rights. The officers abused their position of public trust to harass and brutalize both Plaintiffs, including sexually assaulting Ms. Zamora not once, but multiple times, by multiple officers. For public employees tasked with the role of upholding peace and virtue in the county to engage in this misconduct is both disgusting and embarrassing. They punctuated their physical attacks with verbal mockery, encouraging each other to further harassment, e.g., because Ms. Zamora was vulnerable to further abuse, leering, "Make her turn around again," and high-fiving and cheering each other on, mocking Plaintiffs, and gratuitously destroying Plaintiffs' property and belongings, commenting that these were "all trash, anyways." This vile, base, and contemptible conduct is oppressive and despicable, and would be looked down on and despised by reasonable people. The officers also showed they were acting with knowing and willful disregard for Plaintiffs' rights and safety, and aware not only of that their own actions were reprehensible, but the probable dangerous consequences of their reprehensible actions, which they deliberately failed to avoid. They fraudulently turned their body cameras on and off to prevent the evidence of the battery from being recorded. They refused to give Plaintiffs their badge numbers or names, even denying at one point that they had badge numbers. At least Defendant Mead's conduct was further fraudulent, in which he intentionally misrepresented later in his police report that "*My BWC was on and documented this incident*" and that "I uploaded photos and my BWC into evidence," knowingly concealing the

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

material fact that he and his fellow officers turned their cameras on and off to prevent footage from capturing misconduct. The officers' casual attitude during the abuse and jocular and encouraging comments to each other, and their well-practiced, coordinated actions in turning their cameras on and off to prevent evidence from being gathered against themselves and each other, show that this is part of a pattern and practice of these officers and the City and SCPD. Moreover, Defendant #227 further betrayed that this reprehensible conduct involves a pattern and practice of the City and SCPD, when he told the Zamoras, "This is how we do it in Santa Clara." Defendants and each of them acted in a willful and intentional manner that was and continues to be despicable, malicious, and outrageous in that it had caused Plaintiffs to suffer cruel and unjust hardship needlessly. The malicious, oppressive, and fraudulent conduct by Defendants, and each of them, justifies an award of punitive damages against them, and each of them, except as alleged above, up to the constitutional maximum, sufficient to punish and deter such willfully despicable conduct in the future.

### FIFTH CLAIM FOR RELIEF
### DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983
### FOURTEENTH AMENDMENT
### FALSE REPORTS
### by Each Plaintiff against All Defendants

103.    Plaintiffs reallege and incorporate by reference, all previous allegations.

104.    Defendants, while acting under color of law, deprived each Plaintiff of their respective civil rights by violating rights guaranteed by the Fourteenth Amendment of the United States Constitution, including but not limited to, the right to be free from falsified police reports, as alleged above.

105.    As a direct and proximate result of the foregoing, each Plaintiff has sustained injury and damage as alleged above.

### SIXTH CLAIM FOR RELIEF
### BATTERY
### by Plaintiff Gloria Zamora against Each Defendant

106.    Plaintiffs reallege and incorporate by reference, all previous allegations.

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

1   107.   Defendants, and each of them, are liable for the assaults and battery committed against

2   Ms. Zamora. Defendant officers, and each of them, committed a battery against Ms. Zamora.

3   Defendants City and SCPD are directly liable for the conduct of their employees, who were each

4   acting within the scope of their agency and employment as police officers for the City and SCPD

5   when they battered Ms. Zamora. The Santa Clara officers each intentionally, repeatedly, and

6   unnecessarily groped her groin, crotch, and buttocks. The first officer, Defendant Mead, did so while

7   pulling her upwards from a kneeling position.

8   108.   After Defendant Mead intentionally sexually groped Ms. Zamora, she was taken

9   behind a police car, where multiple other male officers also each took turns intentionally grabbing

10  and groping her groin, crotch, and buttocks.

11  109.   Ms. Zamora is a small woman, about five feet, two inches tall. She and her husband

12  were surrounded by at least nine male officers armed with drawn guns and tasers. Both Zamoras had

13  both complied with the officers' demands that they each exit the car in turn when asked to do so. Her

14  husband was restrained in the back of a police cruiser. At no point was any of the officers was making

15  a lawful arrest or detention, nor was Ms. Zamora at any time attempting to escape or resisting, nor

16  threatening to do so. At no point did she reasonably appear to pose any immediate threat to the safety

17  of any Defendant or any others. Ms. Zamora was wearing form-fitting leggings which made it

18  completely unnecessary to grope her crotch, buttocks, or groin, let alone the multiple times, by

19  multiple different men. Each Defendant did this with the intent to harm or offend her, relishing her

20  upset, humiliation, and distress. The officers were relaxed and enjoying themselves as they abused

21  Ms. Zamora, making jokes, high fiving each other, and cheering each other on. A reasonable person

22  in Ms. Zamora's situation would have been offended. Each inappropriate touching, groping, and

23  sexual harassment was entirely unjustified and constitutes civil battery.

24  110.   At no point did Ms. Zamora consent to being sexually groped or touched by any of

25  Defendants.

26  111.   Ms. Zamora was, in fact, harmed and offended by Defendants, and each of their,

27  conduct and each of their conduct was a substantial factor in causing Ms. Zamora's harm. As a direct

28  and legal result of the aforesaid acts of Defendants, and each of them, Ms. Zamora has become

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

mentally upset, severely emotionally distressed, frustrated, depressed, embarrassed, fragile, humiliated, and aggravated. Plaintiff claims non-economic or general damages for such mental and emotional distress and aggravation in a sum in excess of the jurisdictional minimum of this Court.

112.    As a further direct and proximate result of the wrongful acts of Defendants, and each of them, Ms. Zamora has been forced to hire attorneys to prosecute the claims herein and has incurred and is expected to continue to incur attorney's fees and costs in connection therewith, entitling her to recover attorney's fees and reimbursement of costs under California Government Code § 12965(b).

113.    In doing the things alleged each Defendant was acting within the course and scope of this agency or employment of the City and SCPD, and with the consent, permission, and authorization of each other Defendants. Each officer Defendant was on duty as a peace officer and exercising his authority as a peace officer when they, and each of them, engaged in the misconduct alleged, and such misconduct resulted from the use of their authority as peace officers. All actions of each Defendant were ratified and approved by officers and managing agents of each other Defendant. Indeed, this pattern of harassment and police misconduct is a custom that is permanent, widespread, and well-settled practice of the City and SCPD. As Defendant #227 stated to Plaintiffs, "This is how we do it in Santa Clara." Accordingly, the City and SCPD are also liable for each of the unlawful searches and seizures alleged.

114.    Defendants, including each officer and SCPD while acting through their public employees, committed the acts described deliberately, oppressively, and maliciously, in conscious disregard for Ms. Zamora's rights. The officers abused their position of public trust to sexually assault Ms. Zamora not once, but multiple times by multiple officers. Defendants' misconduct was not only offensive contact but also sexual harassment. For public employees tasked with the role of upholding peace and virtue in the county to engage in civil battery and sexual harassment is both disgusting and embarrassing. They punctuated their physical attacks with verbal mockery, encouraging each other to further harassment because Ms. Zamora was vulnerable to further abuse, leering, "Make her turn around again," and high-fiving and cheering each other on. This vile, base, and contemptible conduct is oppressive and despicable, and would be looked down on and despised by reasonable people. The officers also showed they were acting with knowing and willful disregard for Ms. Zamora's rights

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

and safety, and aware not only of that their own actions were reprehensible, but the probable dangerous consequences of their reprehensible actions, which they deliberately failed to avoid. They fraudulently turned their body cameras on and off to prevent the evidence of the battery from being recorded. They refused to give Plaintiff their badge numbers or names, even denying at one point that they had badge numbers. At least Defendant Mead's conduct was further fraudulent, in which he intentionally misrepresented later in his police report that "*My BWC was on and documented this incident*" and that "I uploaded photos and my BWC into evidence," knowingly concealing the material fact that he and his fellow officers turned their cameras on and off to prevent footage from capturing misconduct. The officers' casual attitude during the abuse and jocular and encouraging comments to each other, and their well-practiced, coordinated actions in turning their cameras on and off to prevent evidence from being gathered against themselves and each other, show that this is part of a pattern and practice of these officers and SCPD. Moreover, Defendant #227 further betrayed that this reprehensible conduct involves a pattern and practice of the City and SCPD, when he told the Zamoras, "This is how we do it in Santa Clara." Defendants and each of them acted in a willful and intentional manner that was and continues to be despicable, malicious, and outrageous in that it had caused Ms. Zamora to suffer cruel and unjust hardship needlessly. The malicious, oppressive, and fraudulent conduct by Defendants, and each of them, justifies an award of punitive damages against them, and each of them, except as alleged above, up to the constitutional maximum, sufficient to punish and deter such willfully despicable conduct in the future.

### SEVENTH CLAIM FOR RELIEF
**FALSE IMPRISONMENT**
**Each Plaintiff against Each Defendant**

115.    Plaintiffs reallege and incorporate by reference, all previous allegations.

116.    To the extent Defendants had any probable cause to detain Plaintiffs, it was for driving a car with one equipment violation. A seizure justified by traffic infractions becomes unlawful under California law if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket. Defendants prolonged Plaintiffs' detention for longer than required to issue a traffic ticket, and for longer than required to ascertain that the vehicle was Ms. Zamora's and not stolen.

1    Neither was ever given a citation. Defendants unlawfully detained each Plaintiff in handcuffs and in

2    the back of the police car, after subjecting Ms. Zamora to humiliating, invasive searches, all without

3    probable cause, giving rise to this claim for false imprisonment.

4        117.    As a direct and proximate result of the foregoing, each Plaintiff sustained injury and

5    damage as alleged above.

6        118.    In doing the things alleged each Defendant was acting within the course and scope of

7    this agency or employment of City and SCPD, and with the consent, permission, and authorization

8    of each other Defendants. Each officer Defendant was on duty as a peace officer and exercising his

9    authority as a peace officer when they, and each of them, engaged in the misconduct alleged, and

10   such misconduct resulted from the use of their authority as peace officers. All actions of each

11   Defendant were ratified and approved by officers and managing agents of each other Defendant.

12       119.    Indeed, SCPD and City had an official custom of violating Plaintiffs' civil rights as

13   described. This pattern of excessive force is a custom that is permanent, widespread, and well-settled

14   practice of the City and SCPD. As Defendant #227 stated to Plaintiffs, "This is how we do it in Santa

15   Clara." Each Defendant officer was an officer and employee of SCPD and City and intentionally

16   violated each Plaintiff's rights to be secure in their persons against unreasonable seizures and

17   excessive force, and each of their conduct in fact violated Plaintiffs' rights to be secure in their

18   persons against unreasonable seizures and excessive force, and Defendants, and each of them, did so

19   because it was official custom in SCPD and the City.

20       120.    Accordingly, the City and SCPD are also liable for each of the acts of excessive force.

21       121.    Defendants, including each officer and SCPD while acting through their public

22   employees, committed the acts described deliberately, oppressively, and maliciously, in conscious

23   disregard for each Plaintiff's rights. The officers abused their position of public trust to harass and

24   brutalize Plaintiffs, including sexually assaulting Ms. Zamora not once, but multiple times, by

25   multiple officers. For public employees tasked with the role of upholding peace and virtue in the

26   county to engage in this misconduct is both disgusting and embarrassing. They punctuated their

27   physical attacks with verbal mockery, encouraging each other to further harassment, e.g., because

28   Ms. Zamora was vulnerable to further abuse, leering, "Make her turn around again," and high-fiving

COSTANZO LAW FIRM, APC
111 W. St. JOHN STREET, #700
SAN JOSE, CA 95113

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

and cheering each other on, mocking Plaintiffs, and gratuitously destroying Plaintiffs' property and belongings, commenting that these were "all trash, anyways." This vile, base, and contemptible conduct is oppressive and despicable, and would be looked down on and despised by reasonable people. The officers also showed they were acting with knowing and willful disregard for Plaintiffs' rights and safety, and aware not only of that their own actions were reprehensible, but the probable dangerous consequences of their reprehensible actions, which they deliberately failed to avoid. They fraudulently turned their body cameras on and off to prevent the evidence of the battery from being recorded. They refused to give Plaintiff their badge numbers or names, even denying at one point that they had badge numbers. At least Defendant Mead's conduct was further fraudulent, in which he intentionally misrepresented later in his police report that "*My BWC was on and documented this incident*" and that "I uploaded photos and my BWC into evidence," knowingly concealing the material fact that he and his fellow officers turned their cameras on and off to prevent footage from capturing misconduct. The officers' casual attitude during the abuse and jocular and encouraging comments to each other, and their well-practiced, coordinated actions in turning their cameras on and off to prevent evidence from being gathered against themselves and each other, show that this is part of a pattern and practice of these officers and the City and SCPD. Moreover, Defendant #227 further betrayed that this reprehensible conduct involves a pattern and practice of the City and SCPD, when he told the Zamoras, "This is how we do it in Santa Clara." Defendants and each of them acted in a willful and intentional manner that was and continues to be despicable, malicious, and outrageous in that it had caused Ms. Zamora to suffer cruel and unjust hardship needlessly. The malicious, oppressive, and fraudulent conduct by Defendants, and each of them, justifies an award of punitive damages against them, and each of them, except as alleged above, up to the constitutional maximum, sufficient to punish and deter such willfully despicable conduct in the future.

### EIGHTH CLAIM FOR RELIEF
### CALIFORNIA CIVIL CODE §§ 51.7 AND 52.1
### by Each Plaintiff against All Defendants

122.   Plaintiffs reallege and incorporate by reference, all previous allegations.

123.    Defendants and each of them are subject to liability under California Civil Code §§ 51.7 and 52.1 because they violated each Plaintiff's federal and state constitutional and statutory rights and did so because of their race and because of Ms. Zamora's gender, and with violence, and with threats, intimidation, or coercion.

124.    Defendants and each of them retaliated against Plaintiffs because they asked for the reason they were being detained, and the officers' name and badge numbers, and otherwise questioned the abuse to which they were subjected in violation of the First Amendment and California Constitution Art. I, § 3. Defendants violated Plaintiff's right to equal protection under the Fourteenth Amendment and California Constitution Art. I, § 7(a), to be free of excessive force, unlawful searches seizure made without probable cause and violated their rights to bodily integrity as guaranteed by the Fourth Amendment, California Constitution. Art. I, § 13 and California Civil Code § 43. Defendants and each of them violated each of these rights through the use of violence, threats, coercion and intimidation, including the detention of each Plaintiff, and the sexual battery and assault of Ms. Zamora.

### NINTH CLAIM FOR RELIEF
### NEGLIGENCE
### by Each Plaintiff against All Defendants

125.    Plaintiffs reallege and incorporate by reference, all previous allegations.

126.    At all times, each Defendant owed each Plaintiff the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

127.    At all times, each Defendant owed each Plaintiff the duty to act with reasonable care.

128.    These general duties of reasonable care and due care owed to each Plaintiff by all Defendants include but are not limited to the following specific obligations:

> a.    to refrain from using excessive and/or unreasonable force against either Plaintiff;
>
> b.    to refrain from causing either Plaintiff to be wrongfully arrested and/or detained;
>
> c.    to refrain from unlawfully entering and searching either Plaintiff's property;

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

d.      to refrain from unlawfully destroying or damaging Plaintiff's property;

e.      to refrain from abusing authority granted Defendant by law;

f.      to use generally accepted police procedures and tactics that are reasonable and necessary under the circumstances;

g.      to refrain from violating either Plaintiff's rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

129.    Additionally, these general duties of reasonable care and due care owed to Plaintiff by Defendants City (through its employees and agents) and Nikolai include but are not limited to the following specific obligations:

a.      to properly and adequately hire, investigate, train, instruct, supervise, monitor, evaluate, investigate, and discipline SCPD employees, agents, and/or law enforcement officers to ensure that those employees/agents/officers act at all times in the public interest and in conformance with law;

b.      to make, enforce, and at all times act in conformance with policies and customs on behalf of the SCPD that are lawful and protective of individual rights, including each Plaintiff;

c.      to refrain from making, enforcing, and/or tolerating the wrongful policies and customs set forth above.

130.    Defendants, and each of them, through their acts and omissions, breached each and every one of the duties owed to Plaintiffs, and either of them.

131.    As a direct and proximate result of this negligence, Plaintiffs and each of them sustained injuries and damages, and against each and every Defendant are entitled to relief and punitive damages against each and all Defendant law enforcement officers under California law. For this claim the Defendant City is vicariously liable for the conduct of its employees and agents under California Government Code § 815.2.

//

//

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

1

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113

## PRAYER

132.   **WHEREFORE,** Plaintiffs, and each of them, pray for relief against Defendants, and each of them, as set forth below:

A.   For general damages, according to proof, on each claim for which such damages are available;

B.   For special damages, according to proof, on each claim for which such damages are available;

C.   For punitive damages, according to proof, on each claim for which such damages are available under 42 U.S.C. § 1983 and California law (punitive damages are not sought against the City of Santa Clara);

D.   For declaratory relief to declare the conduct of Defendants, and each of them, to be in violation of Plaintiff's, and each of their, rights;

E.   For injunctive relief to enjoin Defendants, and each of them, from engaging in such conduct, including the unconstitutional customs, policies, practices, procedures, training and supervision as may be determined and/or adjudged by this case; and prohibiting Defendants and their law enforcement officers from engaging in the "code of silence" as may be supported by the evidence;

F.   For reasonable attorney's fees incurred in this action on those claims for which such fees are recoverable under applicable law;

G.   For costs of suit incurred in this action;

H.   For all other damages, penalties, costs, interest, and attorneys; fees as allowed by 42 U.S.C. §§ 1983, and 1988; California Code if Civil Procedure § 1021.5, California Civil Code §§ 52 et seq., 52.1, and as otherwise may be allowed by California and/or federal law;

I.   For pre- and post-judgment interest as allowed by law; and

J.   For such other and further relief as the court deems just and proper.

## JURY TRIAL DEMAND

Each Plaintiff demands a trial by jury on all issues and claims so triable.

Dated:  July 21, 2021                                    COSTANZO LAW FIRM. APC

*/s/ Lucy Goodnough*
Lori Costanzo
Lucy Goodnough
Attorneys for Plaintiffs
Gloria Zamora and Antonio Zamora

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET, #700
SAN JOSE, CA 95113